_LAUSTEVEION JOHNSON_
Name
_SDCC, P.O. BOX 208_
_Indian Springs, NV. 89070_
_#82138_
Prison Number

FILED _____ ENTERED
_____ RECEIVED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

FEB 12 2021

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

_LAUSTEVEION JOHNSON_ ,
                          Plaintiff

vs.

_COVID-19, CHARLES DANIELS_ ,
_BRIAN WILLIAMS, WILLIAM HUTCHINGS_ ,
_G. HERNANDEZ, MCCOY, CROMWELL_ ,
_MONIQUE HUBBARD-PICKETT_ ,
_L. MARTINEZ, KATLYN BRADY_ ,
                          Defendant(s).

(See Additional page for continuation of Defendants)

**2:21-cv-00247-APG-EJY**

**CIVIL RIGHTS COMPLAINT
PURSUANT TO
42 U.S.C. § 1983**
" _JURY TRIAL DEMANDED_ "

_COVID-19_

### A.    JURISDICTION

1)    This complaint alleges that the civil rights of Plaintiff, _Lausteveion Johnson_ ,
                                                    (print plaintiff's name)

who presently resides at _SDCC (Southern Desert Correctional Center)_ , were violated by

the actions of the below-named individuals that were directed against Plaintiff at

_SDCC_                                        on    the    following    dates:
     (institution/city where violation occurred)

_3/11/20 – Present_ , _3/11/20 – Present_ , and _3/11/20 – Present_ .
     (Claim 1)                (Claim 2)                (Claim 3)

Revised 7/8/19

(Additional page for Continuation Of Defendants)

LIST OF ALL NAMED DEFENDANTS:

1. CHARLES DANIELS, Director Of NDOC,
2. BRIAN WILLIAMS, Deputy Director of NDOC,
3. WILLIAM HUTCHINGS, Warden,
4. G. HERNANDEZ, Caseworker,
5. McCoy, Head Caseworker
6. CROMWELL, Caseworker
7. Monique HUBBARD-PICKETT, AW,
8. L. MARTINEZ, do. Correctional Officer,
9. Katlyn BRADY, Deputy Attorney General,
10. Aaron FORD, Attorney General,
11. ATTORNEY GENERALS OFFICE, et.al,
12. BOARD OF PRISON COMMISSIONERS, et.al,
13. STEVE SISOLAK, Governor of Nevada,
14. BOARD OF PAROLE COMMISSIONERS, et.al,
15. JAMES SCALLY, AWO
16. _____ MINEV, Director of Nursing
17. John Doe, NDOC MEDICAL DIRECTOR
18. OMD (Offender Management Division) et.al,
19. John Doe, Medical Practitioner,
20. CLARK COUNTY, NEVADA, et.al,
21. Indian Springs, NEVADA, et.al,
22. DANA EVERAGE, Chaplain
23. Oswald J. REYES, Culinary Supervisor
24. Property Staff c/o, John Doe,
25. John Doe Property Supervisor,
26. H. GONZOLEZ, c/o Unit 2-A
27. RASHUNDA SMITH, Caseworker
28. RAGINA BARRETT, Caseworker
29. Julio MESA, c/o
30. Douglas THRASHER, c/o
31. CHRISTOPHER HARRIS, c/o.
32. TIMOTHY KNATZ, c/o.

1-A

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

2) Defendant _Charles Daniels_ resides at _NDOC_ , and is
(full name of first defendant)      (address of first defendant)

employed as _Director of NDOC_ . This defendant is sued in his/her
(defendant's position and title, if any)

✓ individual ✗ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _as director of NDOC_

_____

3) Defendant _Brian Williams_ resides at _NDOC_ , and is

employed as _Deputy Director of NDOC_ . This defendant is sued in his/her

✓ individual _~~✗~~_ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _as deputy director of NDOC_

_____

4) Defendant _William Hutchings_ resides at _NDOC_ , and is

employed as _Warden of SDCC_ . This defendant is sued in his/her

✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: _as Warden_

_____

2

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

5) Defendant _____ *McCoy* _____ resides at _____ *NDoC* _____
         (full name of first defendant)                    (address if first defendant)
and is employed as _*Caseworker at SDCC*_ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _*as Caseworker*_ _____

_____

6) Defendant _____ *Cromwell* _____ resides at _____ *NDoC* _____
         (full name of first defendant)                    (address if first defendant)
and is employed as _*Caseworker at SDCC*_ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _*as Caseworker*_ _____

_____

7) Defendant _*Monique Hubbard Pickett*_ resides at _____ *NDoC* _____
         (full name of first defendant)                    (address if first defendant)
and is employed as _*AW (Associate Warden)*_ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _*as AW*_ _____

_____

8) Defendant _*L. Martinez*_ _____ resides at _____ *NDoC* _____
         (full name of first defendant)                    (address if first defendant)
and is employed as _*C/o (Correctional Officer)*_ . This defendant is sued in his/her
              (defendant's position and title, if any)
_✓_ individual _✓_ official capacity. (Check one or both). Explain how this defendant was
acting

under color of law: _*as C/o.*_ _____

_____

**Make a copy of this page to provide the below**
**information if you are naming more than five (5) defendants**

9) Defendant *Kathlyn Brady* resides at *NV*
(full name of first defendant)                    (address if first defendant)
and is employed as *Deputy Attorney General* . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: *as Deputy Attorney General*

10) Defendant *Aaron Ford* resides at *NV.*
(full name of first defendant)                    (address if first defendant)
and is employed as *Attorney General* . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: *as Attorney General*

11) Defendant *Attorney General Office* resides at *NV*
(full name of first defendant)                    (address if first defendant)
and is employed as *Ago (Attorney Generals Office)*. This defendant is sued in his/her
(defendant's position and title, if any)
___ individual ✓ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: *as AGO*

12) Defendant *Board of Parole Commissioners* resides at *NV*
(full name of first defendant)                    (address if first defendant)
and is employed as *Board of Parole Commissioners* . This defendant is sued in his/her
(defendant's position and title, if any)
✓ individual ✓ official capacity. (Check one or both).  Explain how this defendant was
acting

under color of law: *as Board of Parole Commissioners*

2 - B

**Make a copy of this page to provide the below
information if you are naming more than five (5) defendants**

13) Defendant *Board of Prison Commissioner et al* resides at _____ *N/V* _____, and is
    (full name of first defendant)                              (address of first defendant)

employed as *Board of Prison Commissioners*. This defendant is sued in his/her
                (defendant's position and title, if any)

✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: *as Board of Prison Commissioners* _____

_____

14) Defendant *James Scally* resides at _____ *N/A* _____, and is

employed as *AWO (Associate Warden of Operations at SOCC*. This defendant is sued in his/her

✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: *as AWO* _____

_____

15) Defendant _____ *Miners* _____ resides at _____ *N/V* _____, and is

employed as *Director of Nursing* . This defendant is sued in his/her

✓ individual ✓ official capacity. (Check one or both.) Explain how this defendant was acting

under color of law: *as Director of Nursing* _____

_____

16) Defendant John Doe, resides at SDCC, is employed as "NDOC Medical Director". and is being sued in individual and official capacity.

17) Defendant OMD, resides in Carson City and is employed at "Offender Management Division, and is sued in individual and official capacity,

18) John Doe, resides at SDCC, and is employed as Medical Practitioner, and is being sued in individual and Official capacity.

19.) Defendant Clark County Nevad, resides in Clark County, and is employed as Clark County. And is being sued in individual and official Capacity.

20) Defendant Indian Springs, Nevada, is employed as Indian Springs, and is being sued in her individual and official Capacities.

21.) Defendant Dana Everage, resident at SDCC and is employed as Chaplan of SDCC and is being sued in his individual and official capacity,

22.) Defendant John Doe, is employed as Kitchen Supervisor, as is sued in individual and official capacity.

23.) Defendant John Doe, is employed as SDCC Property Staff and is sued in individual and official capacity,

24.) Defendant K. Gonzalez, is employed as c/o. Correctional Officer and is sued in his individual and official capacity,

25.) Defendant, John Doe, is employed as Property Supervisor, and is sued in individual and official capacity,

26.) Defendant Hashmukh Smith, is employed as Caseworker, and is sued in individual and official capacity,

27.) Defendant Regina Barrett, is employed as Caseworker, and is sued in her individual and official capacity,

28.) Defendant Douglas Thrasher, is employed as Officer, and is sued in individual and official capacity,

29.) Defendant John Mesa, is employed as c/o, and is sued in individual and official capacity,

30.) Defendant Christopher Harris, is employed as c/o, and is sued in his individual and official capacity,

31.) Defendant Timothy Thatz, is employed as c/o, and is sued in his individual and official capacity,

d-D

21) Defendant _Steve Sisolak_ resides at _____,
        (full name of first defendant)              (address if first defendant)
and is employed as _Governor of Nevada_. This defendant is sued in his/her
        (defendant's position and title, if any)
✓ individual ✓ official capacity.  (Check one or both).  Explain how this defendant was acting

under color of law: _as Governor_
_____

7) Jurisdiction is invoked pursuant to 28 U.S.C. § 1343 (a)(3) and 42 U.S.C. § 1983.  If you wish to assert jurisdiction under different or additional statutes, list them below.

_Supplemental Jurisdiction 28 U.S.C. Sec. 1367_

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - -

## B. NATURE OF THE CASE

1)    Briefly state the background of your case.

1.) Plaintiff, Lawtevelvq Johnson is a prisoner currently improperly confined and housed at SDCC (Southern Desert Correctional Center) Plaintiff is and has been classified for LCC (Love Lock Correction Center) since around 3/20/19. Plaintiff is filing this civil action Pro Se. Plaintiff is suing all named defendants in both their individual and official capacities. All violations Mentioned in this complaint occured while Plaintiff was housed At SDCC.

2.) Plaintiff was classified to LCC on around 3/20/19 and was transfered to LCC on around 8/20/19. Plaintiff was transfered from SDCC Because he was assaulted by Staff at SDCC. Plaintiff was transfered back to SDCC from LCC on around 1/20/20 for —
(See Additional page for Continued Nature of the case)

## C. CAUSE OF ACTION

(Continued Nature of the Case)

"COURT AND RETURN" STATUS. Which means, "after his court appearances are completed, that Plaintiff will be returned (transferred) back to the institution that he is classified for — which is LCC (Lovelock Correctional Center). Plaintiff had to be housed at SDCC on his "Court and Return Trip". Plaintiff had multiple scheduled court appearances in U.S. District Court, DISTRICT OF Nevada, regarding multiple trials and settlement hearings, regarding multiple civil actions against NDOC prison officials. Plaintiffs Find Court appearance was on 10/28/20.

3.) Since Plaintiff arrived back at SDCC on around 1/30/20 he was placed in the "dormitorys," which are units 11 and 12 at SDCC. Plaintiff was in units 11 and 12 from around 1/30/20 — 10/6/20 when he was sent unit 2 around 10/6/20.
Unit 2 is the "Quarantine Unit" at SDCC. SDCC wanted him to be placed in the "SDCC COVID Quarantine unit 2," because he was expected to go to Trail in a Civil action against NDOC Deputy Directors Brian Williams on 10/19/20. Plaintiff eventually went to Trial on case No. 2:16-cv-01889-GMN, from 10/26/20 — 10/28/20.

4.) Plaintiff had another Civil trial scheduled for 1/19/21 which he "cancelled" for reasons listed below.....

5.) Plaintiff is a devout Muslim of the Islam Religion which is why he signed up to be upon the Religious diet "Common Fare."

6.) While in the Quarantine Unit 2 from 10/6/20 — 11/14/20 Defendants Daniels, Williams, Hutchings, Hernandez, McCoy, Cromwell?, Pickett, Martinez, Scally, Everage, Reyes, Gonzalez, refused to allow Plaintiff to order canteen (store) and refused to allow him to receive his full "Common Fare" meals. For instance, for dinners, these Defendants would only issue him his "Cold portions" and not his "Hot Portions." The Cold portions only consisting of "1) a small teaspoon of Vegan Gluten Free (Smart Balance butter spread), 2) 1 bell-pepper, and a quarter of an "onion." This was an everyday occurrence. These half-meals coupled with "not allowing him to order," made it impossible for him to Remain on this religious diet because he was Starving. So on 10/22/20 Plaintiff requested to be "Removed" from his Religious diet so that he can be served his complete meals. He was

3-A

removed from his Religious diet on around 10/23/20.

7.) Hernandez told Plaintiff on around 10/24/20 that he's not allowing Plaintiff to order (stores)" because, "Plaintiff is going to trial against Staff.

8.) Plaintiffs first day of trial was on around 10/26/20. It was very cold that morning, so he wanted to wear his $70.00 Jacket on Transport to trial. But SDCC Staff told him that he couldn't wear his Jacket. So SDCC Property Staff placed Plaintiffs Jacket inside of SDCC Property Room but refused to give it back to Plaintiff.

9.) On around 10/20/20 Plaintiff started writing Kites (Inmate Request forms) to Scally, McCoy, Hutchings, Cromwell, Hernandez, Daniels, Gonzalez, and Martinez (1) to allow me to be the unit 2 Porter and to remain in Unit 2 because I am not classified for SDCC. So I will be sent back to LCC after my trial and (2) Because I was sexually assaulted by SDCC Staff in 2017 which is the reason why I dont want to be placed back on General Population; and (3) Because He is afraid of contracting COVID-19 if he was to be housed in GP (General Population)." That he is currently housed in isolation in a single cell; and it protected from contracting COVID; that he is afraid of COVID-19 in general. But even more so because more so because he has "Pre-existing Medical Conditions" of "Hypertension", "Sinus infections" and sever genetic allergys".

           So because he falls within this "Vulnerable class" of People with pre-existing conditions, it makes it more likely that Plaintiff would (1) Contract COVID-19 because of structural design of SDCC and (2) That he'd become severely ill and die due to COVID-19 complications. Plaintiff was aware that SDCC and defendants refused to put "Federal, CDC, State COVID-19 precautionary measures in place to prevent Plaintiff and other inmates from contracting COVID-19 in GP at SDCC and in NDOC.

10) On around 10/20/20 at 12:30pm Hernandez come to Plaintiffs cell door to discuss a video of his 2016 parole board hearing for trial. After Hernandez and Plaintiff discussed the Video trial exhibit, Plaintiff address the fact that Hernandez hasn't allowed him to order

Store, nor allowed Plaintiff to be "Porter." Hernandez stated that, "You're going to trial against Staff" and "I (Hernandez) will not give you the porter job because you filed a suit against us. If I gave you the porter job is't find a reason to write a grievance on the things that you see in the unit while working as a porter. So no! You will never be one of my porters!" So I was never made a PORTER. In face they had to hire no porters every 3 days because the porters that they were choosing were all going home so they would hire a porter and he would leave. Then they'd move more people int the unit who was going home. They'd hire them and they'd leave. But they skiped over Plaintiff at every stage for the Reasons listed above.

11.) On 11/11/20 Martinez told Plaintiff at 8:15Am that "Hernandez and Gonzalez said that, "They (unit 2 Staff) cannot give Plaintiff the unit 2 porter job because allow me to stay in unit 2 or he would guarantee because 'All Plaintiff does is file grievances and lawsuits. So if you (Plaintiff) became a porter and are allowed to walk around the unit, you're going to see something and find a reason to file a grievance and lawsuit" so Plaintiff wasn't issued the Porter Job or allowed to remain in isolation.

## COVID-19

12.) Plaintiff attests that, "The COVID-19 /Coronavirus" became a "Global Pandemic" recognised everywhere around the World on or around March 1, 2020. Coronavirus is a highly contagious — deadly virus. This virus is especially deadly for people with "Pre-existing Medical conditions." People with "Pre-existing Medical conditions, fall into the "Vulnerable Class," as they are more susceptible to either becoming severly ill or dying from COVID-19.

COVID-19 literally put the entire globe on "Lockdown" in 2020. The CDC (Center For Disease Control), Anthony Fuchi (leading specialist on COVID-19), Governor: Steve Sisolak have all mandated the following COVID-19 precautionary measures;

3-6

(1) Masks, (2) Washing of hands in "Hot Water", (3) Indoor facilities to be reduced to 25% occupancy, (4) At least 6-feet social distancing (5) Sanitize surface areas that have been exposed to COVID-19, (6) To quarantine, and isolation those who have been exposed to COVID-19 and those who have contracted COVID-19. These individuals should be quarantined for 14-days.

13) Prior to 11/12/20, not only did Plaintiff file strikes and grievances requesting to "Remain in Unit 2" where he was physically isolated in a single cell and protected from COVID-19 due to 6-feet social distancing, and as a safety measure not to be sexually assaulted by female staff. But he also took the following step to try to protect himself at SDCC, (1) on 11/2/20 Plaintiff filed a "Motion For Continuation of Trial" or "In The Alternative Motion To Voluntarily Dismiss Case" (case No. 2:17-cv-01121-APG-VCF) this on the basis that, "Plaintiff is a High Risk to have major complications if he were to contract COVID-19, due to his Pre-existing Medical conditions of hypertension, sinus infections." So this was based primarily on COVID-19 concerns. And it was so serious to Plaintiff that he told this court in said motion that, "If the court couldn't continue trial for said reasons, then "Dismiss the case" because he doesn't want to RISK his life.

(2) On 11/3/20 in Case 2:17-cv-02304-RFB, Plaintiff filed an "Emergency Motion For Immediate Transfer/Emergency Preliminary Injunction," to be transferred to LCC due to COVID-19 concerns and those of PREA issues with staff at SDCC.

(3) On 11/4/20 in case No. 2:17-cv-01121-APG; Plaintiff filed a "Motion To Vacate Trial Date", Due to "COVID-19 Concerns."

(4) On 11/6/20 in Case No. 2:17-cv-01121-APG-VCF 'Plaintiff filed a "Plaintiffs Unopposed Motion For Immediate Transfer", for COVID-19 Concerns.

(5) On 12/6/20 in 2:17-cv-01121-APG-EJY, Plaintiff filed a "Plaintiff's Reply To Defendants Opposition To Plaintiff's Unopposed Motion For Transfer" based on COVID-19 health issues/PREA safety concerns from SDCC staff

Defendants Brady, Smith, Bennett, Mesa, Thrasher, Ford, Harris, Unatz, McCoy, Cromwell, Hutchings, Daniels, Scally, Henderson, Pickett all opposed the requests for Transfer from SDCC and LCC and

3-D

denied Plaintiffs request to remain in unit 2 where he was 6-feet Socially distanced in isolation

As it related to his request for Transfer, Brady and Pickett and above named defendants Opposed his Motion for Transfer and denied his transfer by stating that, "NDOC is not doing transfers because of Covid-19, and if he was to be transfered, he would have to be quarantined at SDCC for 14-days as any inmate would be if they are transfered." This Even though on around 12/31/20 11 Mexican and White Inmates were transfered from HDSP to SDCC and they got off of the transport van and went directly to unit 11 at SDCC without being quarantined at all. So Brady and Picketts signed declaration is false! As to their reason for not transfering Plaintiff back to SDCC. This even though they knew that Plaintiff was Not Classified as an SDCC Inmate But rather that he as classified as a LCC inmate. That he was on "Court-and-Return" status at SDCC. And he was supposed to be Returned back to "LCC" after Court. Plaintiffs Court ended on 10/28/20..

14.) On around 3/11/20 due to COVID-19 SDCC ended all "Visiting".

15.) In around September of 2020 Governor: Steve Sisolak, issued a state mandate/State Directive that "Indoor establishments Must be reduced to 25% occupancy," This to allow for 6-feet Social Distancing in Nevada Indoor establishments.

16.) Defendants Never issued Plaintiff hand sanitizer from 11/20/20 — to the present.

17.) Defendants kicked Plaintiff out of the quarantine unit (Unit 2) on or Around 11/12/20 and forced him to move to Unit 12-A, bunk 4-N. Unit 12 is a Dorm (Dormitory) that houses approximately 120 inmates in a very small space. The conditions in the Dorms (Unit 11 and 12) at SDCC is as follows:

(1) There are 240 inmates inside of these units 11 and 12.

(2) In unit 12-A there are 120 inmates and it was at all times filled to 100% or

3-E

98% occupancy.

(3) In unit 12-A there are only 2 restrooms, and 2 water fountains, but no hand-sanitizer.

(4) These 2 Restrooms are only allowed to be cleaned once a day from around 4/10/20 to the present.

(5) That Unit 12-A inmates were never issued hand-sanitizer.

(6) SDCC has never consistently allowed Plaintiff or SDCC inmates cleaning supplies to sanitize Unit 12, save on 12/23/20.

(7) In unit 12-A, inmates are cramped in body to body, bunk to bunk. The bunks are spaced out as follows, (1) the bunk infront of Plaintiff is 6 inches, the bunks on his left and his right are 2½ feet apart, and the bunk beds behind him are 4 feet apart. Plaintiff has always had someone on each side of him since he's been housed in Unit 12-A from 11/13/20. to the present.

18.) Defendants Knew that from January of 2017 to at least 1/1/21, that SDCC Kitchen had "No working Hot water" for Kitchen workers to properly wash and sanitize their hands and the food trays. Defendants Reyes and Hutchings acknowledge this problem. This issue became exacerbated in 2021 due to The COVID-19 "Global Pandemic," where emphasis was placed upon consistantly washing and sanitizing hands to prevent the spread of Coronavirus.

Plaintiff asked Culinary Supervisor: Oswald Reyes +, "Fix the hot water in the Kitchen so that inmates could properly wash and sanitize their hands with Hot water to prevent the spread of COVID-19?" Reyes responded with, "Plaintiff needs to get maintenance to fix it," as if Plaintiff is an NDOC employee? Due to defendants deliberate indifference, The Coronavirus at SDCC spread rapidly from the SDCC Kitchen, to new Kitchen workers (inmates/staff).

19) There was outbreak in Unit 4 amongst Kitchen workers. Unit 4 is the "Workers Unit." There was a "Coronavirus outbreak" in unit 4 amongst Kitchen workers around 11/15/20, which caused SDCC to temporarily suspend those Unit 4 inmates from working in the Kitchen, that tested positive for COVID-19.

3-F

The inmates who worked in the filthy Kitchen when the Outbreak occured, were allowed to Remain working in thitchen even though they were "exposed" to people who tested positive for COVID-19 as they were "working around" and "with" inmates on their shift who tested positive for COVID-19. And these inmates were visibly sick. Yet they were Not quarantine. Rather these 5 + 7 Inmates were allowed to remain working in Kitchen and living in unit 12-A.

22) On around 11/17/20 SDCC AW(Associate Warden) Monique Hubbard-Pickett, AW James Scally and Other Staff came to unit 12-A to address SDCC institutional lockdowns and Coronavirus concerns. Pickett stated in relevant parts;

"Hutching, Scally and myself have had multiple meetings regarding our Response to COVID-19 at SDCC since March of 2020. And honestly we don't know what to do? That they do not have the answers on how to slow down the spread of COVID-19 at SDCC or how to implement measures at SDCC to slow-down or to prevent the spread of COVID-19 at SDCC"

That unit 12-A is one of the only units at SDCC where no one in that unit has tested positive for COVID-19. You guys must have good water in this Unit. You guys must be Blessed to have no positive COVID-19 tests.

Y'all must be blessed! I say that because of the fact that this (12-A) is an Open dorm. So based upon the fact that this is an open dorm and you guys are packed on top of one another with no barriers. If one person got sick with COVID-19 it'll rapidly spread throughout this entire unit because of this unit is designed with NO PHYSICAL SEPARATION"

Petitioner attests that this was an "Open forum", so he publicly inquired as to, "Why SDCC has not created social distancing conditions in this Dorm (12-A) and reduced occupancy in this dorm to protect us from catching Covid."

Pickett responded with,
"I (Pickett) don't have the Right answers. We (SDCC prison officials) don't know what to do to respond to this COVID CRISIS in this prison.

3-G

"I don't know what to do? We've had countless meetings discussing possible solutions. We don't know what to do?"

Plaintiff responded with, "Well release some of us to create room?" Pickett responded with, "haha we're not ~~going to do that!~~"

21) On 11/19/20 Sisolak, Daniels and Hutchings issued a signed a Memorandum stating that:
" Unit 11 and 12 Dormitorys at socc, the following guidelines will be Implemented:
' Cleaning and disinfecting supplies will be made available, social distancing guidelines WILL BE ADHERED TO MAINTAINING AT LEAST a 6 FOOT DISTANCE."

Though defendants created as signed this Memorandum They never made available cleaning supplies or disinfectant Nor did they implement 6-feet social distancing, as the only way to implement 6-feet social distancing in the unit 11 and 12 dormitorys, would be to "reduce the occupancy" in the dorms dramatically, as mandated by the state to 28% or at least 50%. This reduction in occupancy ~~should~~ ~~create~~ the room/space to implement social distancing. It is impossible to ~~create~~ social distancing conditions in the dorms As Plaintiff stated above, the inmates are crammed in the dorms, with No barriers, with 6 inch, 2½ feet, and 4 feet distance between 6 inmates. This is how close the spacing is of the bunks. But Defendants REFUSED to implement these precautionary measures, as **passed down by the CDC, and Nevada State Directives**

22) On around 11/20/20, the very next day, socc Defendants sent a severely Ill Kitchen worker from unit 5 to 12-A, bunk 5-0/5-P. Defendants Knew that this Hispanic inmate was severely Ill from COVID-19 and that he was "**exposed**" to Covid-19 by being a Kitchen worker and working around and with inmate Kitchen workers (side by side) who contracted COVID-19. Plaintiffs bunk, 4-N was about 3 bunks down from this Hispanics bunk

3-H

This Hispanic inmate was visibly and noticably sick, when he arrived in unit 12A, around 11/30/20. Defendants Cramwell, McCoy, Pickett, Hutchings, Scally "planted" this Hispanic inmate inside unit 12A to "expose" or to "infect" unit 12A inmates "with" or "to" covid19. This Hispanic inmate in bunk, 5-05-P was subsequently hospitalized on around 12/7/20 to around 12/13/20. He was hospitalized due to testing positive for CoronaVirus and not being able to move/walk. He had become too ill to function.

23) Defendants Pickett, Hutchings, Scally, McCoy, Cromwell, also left approximately 5 other inmates (who were kitchen workers) inside unit 12-A, who worked in the kitchen during the unit 4 outbreak, who all ended up "manning-down" in December of 2020. a "Man-down" is an NDOC term which means "NDOC alerts medical that They must immediately rush down to escort an inmate to medical and possibly admit them into the prison infirmary.

24) On around 12/9/20 Hutchings, Pickett, Scally and Reyes came to unit 12-A and pressured unit 12-A inmates into becoming kitchen workers. They stated that "unit 4 is on lockdown because of a CoronaVirus outbreak in unit 4 amongst kitchen workers".

NOTE: Units 3/4 are currently "workers units" They are designed different as cellblocks. So they have more protection from Covid19 inside of those units.

But because of this outbreak in unit 4, these prison officials stated that "they needed unit 12-A to volunteer to work inside of the kitchen" They made a "show of force". They stated that "If unit 12-A inmates did not agree to work inside of the kitchen, then they would only issue unit 12-A 3 cold sack lunches a day (as opposed to 2 hot meals and 1 sack lunch). And that "they would force social distancing on the phone by only allowing 2 people on the phone at a time", in a unit of 120 people. This would surely cause a gang or race riot. So about 20 inmates in unit 12-A volunteered to work in the kitchen. On this same day, McCoy called Pickett's administrators and told Plaintiff that he is 1st on the list to lease back to UCC, but they cant transfer him until covid pandemic is over. Based upon the above and other facts Defendants knew (1) that they had no hot water in the kitchen for inmates to properly wash their hands or to sanitize their hands.

3-I

(2) That the SDCC Kitchen staff tested positive for COVID-19 in October and November of 2020,

(3) That Coronavirus was being spread to SDCC population through the kitchen and kitchen workers.

(4) They knew that Unit 12-A, due ff being a cramped-in dorm, without any barriers, was/is a unit that requires a different or a special type of consideration in a "Coronavirus World," as Plaintiff stated in paragraph 20 herein. This because there is no physical separation. So if one caught Coronavirus in unit 12-A, it could cause a rapid spread in unit 12-A and would cause many people to become infected with COVID-19 and become severely ill or die.

(5) That they knew that due to the outbreaks at SDCC being spread in and from the kitchen and that they had a lack of hot water in the kitchen for inmates to properly wash/sanitize their hands and food trays they knew they were suppose to shut down the kitchen because no kitchen in America is suppose to run without hot. So they were suppose have food catered in from outside sources to protect inmates health. So inmates signed up to work in the kitchen on around 12/4/20 due to Defendants pressure tactics and "show of pressure". This was a malicious and sadistic tactic to infect Unit 12-A inmates.

(25) Unit 12-A inmates started actually working inside of the kitchen on around 12/05/20.

(26) On around 12/08/20 Plaintiff and countless unit 12-A inmates became severely ill. So many inmates were coughing with a chronic cough that there existed a "Cloud of Sickness" within the air in unit 12A. This "Cloud of Sickness" was palpable and didn't move because the unit was on lockdown. So unit 12-A were not going to religious services. Not going to rec-yard. No gym. They just stay inside the unit all day. So No fresh-air.
When Plaintiff got sick around 12/08/20 he had the following symptoms, 3 J

(1) Cloudiness in the mind, (2) Blankness in the mind, (3) Memory loss, (4) drowsiness, (5) Vomiting, (6) extreme chest pains, (7) back pains, (8) feeling like he's dying, (9) constantly feeling like he is on the verge of drowning, (10) weakness in body and energy, (11) headaches, (12) sever dry cough, (13) running nose, (14) Urinating on self, (15) body shakes, (16) loss of taste, (17) loss of smell, (18) excessive sneezing and (19) Shortness of breath, (20) Fatigue. Plaintiff had all of these symptoms from around 12/8/20 ——— 1/13/21.

        After 1/13/21 the following after-effects remain to present day, Cloudiness in the mind, Blankness in the mind, memory loss, drowsiness, back pains, feeling of drowning (though it subsided to a degree) weakness in body and energy, sever dry cough (subsided & soft coughs through-out the day) Urinating on self, fatigue, shortness of breath.

        But on 12/8/20 Plaintiff and inmates in Unit 12-A did not know at that time that they had being Infected with Coronavirus. But they started requesting to be tested for COVID-19 and requested Cold packs.

27.) On 12/14/20 Plaintiff and the entire unit of 12-A was tested for Coronavirus.

28) On 12/22/20 Scally, McCoy, Cromwell, Hutchings, Pickett "planted" inmate Persey Rodgers inside of Unit 12-A. They moved Persey Rodgers from Unit 11 to 12-A, bunk 3-Q on 12/22/20 at around 1:00 pm. (Plaintiff believes that that is the inmates name, but Not 100% sure. But he was a black inmate around 43 years of age)

        When Persay Rodgers moved into Unit 12-A Plaintiff and other Unit 12-A Inmates asked Rodgers, "What unit did he (Rodgers) come from?" Rodgers said, "Unit 11," Plaintiff and other Unit 12-A Inmates asked Rodgers "why they would move him from unit 11 to unit 12-A?" Rodgers responded with, "They (SOCC Administration) told me (Rodgers) that they are moving me from 11 to 12-A because I just tested positive for Coronavirus." I told them, "Why am I moving to 12-A instead of the quarantine unit (Unit 2)." They told me, because their are inmates in 3-K

unit 12-A who also tested positive for Coronavirus.

At this time, the inmates in unit 12-A who were supposedly positive for Coronavirus, were not informed by SDCC staff that they tested either negative or positive for COVID-19. So this was another example of SDCC planting inmates inside of unit 12-A that, were either exposed to COVID-19 or who tested positive for COVID-19, in order to infect unit 12-A with COVID-19. Knowing that it'll cause Rapid spread of COVID-19 IN this dorm as already admitted by SDCC staff.

This "plant" of Rodgers inside caused an uproar! It caused unit 12-A inmates to refuse to lockdown for 4:00pm Count on 12/22/20. Unit 12-A inmates caused the entire prison to shutdown because of this "Protest!" Unit 12-A inmates stated they are not locking down until a warden comes down and speaks to us and to answer questions as to why Rodgers was moved over here? What are test results are? To give us fresh air? To give us cleaning supplies to sanitize this sick unit?! etc."

James Scally, And eventually came down to unit 12-A at around 5:00pm. But before he entered into the unit 12-A he ordered Persey Rodgers to be transfered to unit 2 (Quarantine unit) because it caused a "Protest," And only because it caused a Protest. Unit 2 is the unit that he was suppose to originally be transfered to once he tested positive for COVID-19. So Scally moving Rodgers was not genuinely to protect inmates in unit 12-A! Rather it only adds to the cover-up and conspiracy to infect inmates in 12-A. To cover up how many inmates are positive for COVID-19 in unit 12-A.

When Scally entered into the unit 12-A, he asked "who the spokes person was/is?" Plaintiff informed Scally that "he (Plaintiff) is the spokesperson for unit 12-A protesters!" Scally then asked Plaintiff to "sit down at the unit 12-A table with him (Scally) to discuss the unit 12-A protesters demands." Plaintiff complied.

Plaintiff and Scally sat down at the Unit 12-A table, with the unit 12-A protesters surrounding the table as Scally and Plaintiff talked.

Plaintiff then demanded on behalf on himself and the protesters the following things:

"(1) Cleaning supplies, so that they (inmates) could properly clean and sanitize the unit 12-A because inmates in unit 12-A were sick;

(2) To fix the hot water in the kitchen;

(3) To comply with Federal, CDC, state, and institutional covid-19 directives/mandates of 6-feet "Social Distancing" conditions in unit 12-A, so we could be protected from Covid-19;

(4) To issue us proper masks to protect us from Covid-19;

(5) We need to get fresh air, because the sickness is this unit is circulating in this unit because we have no fresh air; and

(6) We want our 12/14/20 COVID-19 Test Results!"

Plaintiff also informed Scally that, "It would violate Federal law to treat this dorm as a quarantine unit, and to dump inmates who test positive for Covid-19." And Plaintiff demanded that "positive inmates be quarantined in isolation to prevent the spread of Covid-19."

Scally responded by stating that, "(1) He would disagree with this unit 12-A being treated as a dumping ground for positive inmates; (2) That, "He is the one who told Medical "not to issue unit 12-A inmates their 12/14/20 Coronavirus test results." Plaintiffs asked Scally "Why?" Scally said because "sometimes c/o.s give mail to the wrong inmates, so if an inmate was issued the wrong results of another inmate it would be a hippa violation. So you guys have to write kites to request your results!" This is the same process. If inmates write kites to medical requesting test results, the answers will still be placed in mail and the c/o.s will still have to pass out the kites and run the risk of giving

3-M

the result + the wrong inmate.[2] This was a delay factor, because they did not want unit-12-A inmates + know that "they were positive for COVID-19." This because they would have to treat inmates and quarantine inmates. And they didn't want to quarantine inmates or to treat inmates because medical was overwhelmed and they had no room to quarantine inmates. There was a CRISIS deliberately created by SDCC

So Plaintiff told Scally that "Some of us have already submitted Medical Kites Requesting our COVID-19 test results. So can you call medical and tell them to answer our kites and send them to us?" Scally responded with, "I (Scally) will tell them to issue you your results." Plaintiff contends that if he was tested for high blood pressure, TB, or for the flu, SDCC would immediate tell him if he was positive and would treat him. Coronavirus is currently the most sever, serious and most contagious virus in America and in the world. So for medical to know people are positive for COVID-19 and for medical and staff Not to tell inmates/patients that "There are positive," is proof of a "Cover-up!" They did Not want inmates to know that they were positive and would not tell them if they don't Request.

Scally said he would bring cleaning supplies the next day (12/28/20) which he did But he said that, "He will not create 6 feet Social Distancing conditions in Unit 12-A." Scally said he will not issue us new masks.

29) Later that night on 12/28/20 Plaintiff and other inmates received their test results back. Plaintiff and 99% of the other inmates[9] tested positive for COVID 19." This further demonstrates that when SDCC 12-A inmates tested "Negative" for COVID-19 in "November of 2020. That they started placing inmates in Unit 12-A who were positive for

3-N

COVID 19 in order to expose inmates to and to infect inmates with COVID-19 in Unit 12-A. And they left inmates in unit 12-A who defendants knew were exposed to COVID 19.

30.) Plaintiff contends that he and Unit 12-A inmates had to literally "Shut down the PRISON" for SDCC prison officials to take Unit 12-A inmates COVID-19 concerns seriously. Inmates had to protest, refused to lockdown, and risk getting into a physical altercation with SDCC officers in order to receive their test results and to get cleaning supplies. SDCC Staff knew that Plaintiff and other Unit 12-A inmates were positive for COVID-19 and Refused to treat them or to quarantine them.

31.) On 12/23/20 Plaintiff called Mercedes Maharris, who works for the Nevada Legislature, District 3, and informed her of all of the above. Maharris recording Plaintiffs phone call and saved said in a file listed as, "COVID-19 NDOC Prisoner Report 23 Dec 2020. mp 4."
Maharris then sent said audio to NV. Governor: Steve Sisolak, Aaron Ford, ABC, NBC, and to "The Associated press" on 12/23/20. And she requested that NDOC release many of its prisons due to COVID 19 Global Pandemic; as California prison, San Quentin was ordered to do on 10/20/20. [On 10/20/20 San Quentin was ORDERED to "Reduce 50% of its population" in to order to create social distancing conditions at San Quentin. See: In re Von Staich, 56 Cal. App. 5th 53 (2020).

32.) S cally came down to unit 12-A to bring bleach and to allow Plaintiff and 5 other inmates to clean the unit To Sanitize the unit, while other inmates get fresh air on 12/23/20 at around 1:00 pm.

While Plaintiff and other inmates were cleaning unit 12-A on 12/23/20, Scally told Plaintiff and other inmates that, "they (SDCC) have been treating Unit 12-A as a quarantine unit, by leaving people in this unit who were positive for COVID and by moving people to this unit who were positive for COVID 19." This even before any of the inmates in unit 12-A were positive for COVID-19. Thus they (SDCC PRISON

3 - G

Officials) deliberately infected unit 12-A inmates with Corona virus.

Scally then asked Plaintiff, "If he was the one who was the speaker for the protesters that day before?" Plaintiff said, "Yes." Scally said, "So you're the trouble-maker huh?! Whats your back number (prison number)!" Plaintiff responded with, "#82188." Scally said, "I got you Mr. Johnson," as if he would retaliate against Plaintiff.

33.) Plaintiff, after receiving his positive test on 12/22/20, immediately started requesting to be placed inside of the "quarantine unit (unit 2) so that he doesn't cause anyone who hasn't contracted coronavirus to be infected with it by him." And also to separate him from the "cloud of sick air" in unit 12-A so that he could heal. At this point Plaintiff had been severely ill for 14-days, with symptoms only increasing in severity.

On around 12/29/20 sdcc prison officials sent Plaintiff and 10 other inmates in unit 12-A was sent to unit 2 for "quarantine." But sdcc prison officials didn't quarantine him alone, but quarantined Plaintiff with another inmate who also tested positive for COVID19, who actually became ill on separate dates. Pla

34.) Plaintiff was released from quarantine unit 2 8-days later on around 1/6/21. But he was placed back into the same cramped dormitory in unit 12-A, bunk 4-N, where he will likely contract coronavirus again; become severely ill or die, because THERE IS NO SOCIAL DISTANCING!

As of 1/8/21 their were NEW STRAINS of COVID-19 that were detected in the UK and IN South Africa, that are 75% MORE Contagious than the original strain. And that the UK strain is in California, Arizona, Utah, and is likely in Nevada. So Plaintiff is a "sitting duck" at SDCC, as it relates to COVID-19. To catching COVID-19 again; when he hasn't ridden himself of the symptoms of/from the last time that he contracted COVID-19.

35.) Plaintiff cannot take the vaccine, because he has sever "Genetic Allergys," according to CDC Recommendations. Vaccines have

8-P

not entered into NDOC. But it should around September of 2021. But by that time Plaintiff could have easily caught Covid-19 again. And he still will not be able to take the Vaccine due to his Sever allergy's.

36.) Though Pickett sent a declaration and Bready stated in November of 2020 that the reason that they couldn't transfer Plaintiff back to the prison that he is classified for (LCC) to protect his safety and health from Covid-19 is "because they are not doing transfers because of Covid-19 and if Plaintiff was transfered he'd have to be quarantined for 14-days." But this was a false stated on multiple levels, because to date, they still hasn't transfered Plaintiff, but they have transfered many inmates to Carson during this period. They reputedly transfered many inmates from ESP & HDSP, during this time period.

Furthermore on around 12/31/20 Defendents moved about 11- hispanic inmates from HDSP and SDCC, into unit 11, without sending them to quarantine unit for 14-days. These inmates were transfered directly from HDSP to general population of SDCC unit 11, with Zero days of Quarantine.

This further proves that, Defendents could have transfered Plaintiff back to LCC in October or November of 2020, but did everything that they could to deliberately expose Plaintiff to Covid-19, to try to cause Plaintiff to became severely ill or to die from Covid-19, out of Retaliation for his lawsuit and grievances filed on:
6/5/20, 6/7/20, 6/17/20, 6/17/20, 6/17/20, 6/31/20, 6/21/20, 6/31/20, 6/34/20, 7/23/20, 7/8/20, 8/12/20, 8/12/20, 8/19/20, 8/12/20, 10/9/20, 10/12/20, 10/17/20, 10/27/20, 10/30/20, 10/30/20, 11/11/20, 11/16/20, 11/17/20, 12/4/20, 12/4/20 etc

37.) Governor: Steve Sisolak, went on state News channels FOX 5, Action 13, 8-News etc, on 12/30/20 at around 3:02 pm to address Nevada State regarding Covid-19. During said address Sisolak stated in relevant parts,

3-Q

"That he (Sisolak), as Governor of Nevada, will follow the CDC (Center for Disease Control) Guidelines regarding Covid-19 precautionary measures, by issuing Mandated State directives as he had been doing since early 2020.

Sisolak asked facilities and businesses and citizens that they MUST take these CDC and NV-State Directives SEriously!"

Sisolak stated that, "It's local Governments responsibility to enforce 6-feet social distancing mandates to prevent Nevada citizens from contracting covid and dying."

Sisolak stated that the following CDC Guidelines and State Directives are still in place for mid-2020.

(1) Washing hands for 20 seconds under hot water.
(2) Sanitizing hands and surfaces.
(3) Maintain at least 6 feet social distancing.
(4) Avoid large social gatherings.
(5) Quarantine those exposed to Covid-19 or those who test positive for Covid-19.
(6) Reduce indoor facilities/establishments/buildings to 25% occupancy."

Sisolak also stated that, "Nevada had the 2nd Highest National Covid-19 Positivity Rate."

So Sisolak was aware that he was supposed to put these precautionary measures IN place, or to "implement" these precautionary measures within NOSC prison facilities but refused to. As SDCC hasn't had cold water in it's kitchen for 4-years, so inmate kitchen workers cannot properly wash or sanitize their hands. They haven't issued it's inmates sanitizer. There is no 6 feet social distancing only 6-inches social distancing. And they are not quarantining exposed or those who test positive for Covid-19 unless the inmate Repeatedly requests to be quarantined.

Plaintiff contends that the Board of PRISON commissioners, is composed of defendant/members Steve Sisolak, Daniels, Williams, Aaron Ford, Parole Board Commissioners, Attorney Generals Office. These individuals and entities are directly responsible for

3-R

creating NDOC prison rule, Regulations, policies and procedures. These defendants are directly responsible for maintaining the health and safety of all inmates confined in NDOC They are responsible for ensuring that SDCC prisons conform to state and Federal law. They are responsible and direct authority to immediately change prison policies, and Regulations to conform with state and Federal law.

These defendants are responsible for creating **Parole** Board reports, for taking inmates to parole board and to grant inmates parole and to release them from custody. These defendants have the authority to take inmates to the parole board early and to release them early for good behavior, for medical reasons, for good merit. etc

Due to the fact that these officials/defendants knew of the seriousness of the CoronaVirus. How Contagious this virus was/is. The fact that it is the most contagious virus in the World. That they knew how serious and sever the symptoms are of COVID-19. That they knew that it has caused countless U.S. citizens to die. These defendants had an Obligation to implement precautionary measures to prevent the risk of substantial harm to Plaintiff and its inmates. Instead the defendants put measures in place to "increase Plaintiffs risk of harm of contracting COVID-19," by REFUSING To Implement precautionary measures provided by and recommended by and mandated by The CDC, Governor of Nevada Via - STATE DIRECTIVES, and by Hutchings.

The COVID-19 protocols and precautionary measures across the board were blanket and adopted by the defendants on paper. And they implemented these measures for the general public, but were deliberately indifferent to the plight of prisoners and NDOC and SDCC. The Defendants created conditions at SDCC that dramatically increased his risk to COVID-19. Which caused him to contract COVID-19 and to sustain the above listed COVID-19 symptoms and "Post Covid syndrome (Covid-19- longterm effects)."

The defendants did not create social distance conditions at SDCC or in NDOC, and they REFUSED to take "reasonable action" to order

3-8

to create 6-feet social distancing conditions in NDOC or SDCC. For instance, The Governor (Sisolak) of Nevada, Attorney Generals office accepted CDC Mandates of 6-feet Social Distancing for all citizens who are out-doors or indoors. They also mandated that all indoor facilities to be **Reduced** to **25%** occupancy.

Pragmatically, the reason why the CDC Mandated facilities/establishments to "reduce their occupancy to 25%" is because it would be impossible to inforce, or to create 6-feet social distancing conditions in a movie theater, museum, church, super-market etc, if the facility, store, Museum is operating at 100% capacity. The only way to create 6 feet Social Distancing is to reduce the occupancy of a facility. If a Movie theature holds **100 seats** and the theature allowed it's threature to be filled 100%, there would be no space for social distancing because they would be seated right next to one another. this is common sense. This is why the CDC and Nevada Government ordered the Mandate of only 25% Occupancy and 6-feet social distancing because you cannot logically have one without the other.

Plaintiff contends that The Defendants were required to do the same thing for State prison facilties in Nevada, if that was/is the only way to "create 6 feet social distancing conditions." But before such measures, Defendants were required to create 6 feet social distancing conditions. But because prisons are not designed for 6-feet social distancing conditions, therefore many states and prisons in other states have treated it's prisoners as U.S. citizens and have followed CDC Guidelines in it's prisons by reducing it's prison population by 50%. In extremely violent prison San Quentin, the California Appellate Court ORDERED San Quentin to "Reduce it prison population by 50%" on 10/20/20 in order to create social distancing conditions at San Quentin prison. see. In re Von Staich, 5le Cal. App. 5TH 531 (2020). And the Inmates at San Quentin were in cells. Plaintiff was/is in a Open dorm.

Plaintiff contends that, though SDCC from 1/1/20 to the present did not have proper mask and sanitizer for it's prisoners, even if it did, it would do nothing to prevent the spread of Covid-19 or to

3-1

allow inmates to protect themselves from COVID-19 if there is no 6 feet social distancing. This because, when he is sitting on his bunk without a mask or eating his food, the man in front of him is 6 inches away, without a wall separating them. Thus the primary COVID-19 precautionary measure is 6 feet Social distancing. And because Plaintiff lives in an "indoor facility"; the facility has to Reduce it's population to at least 50% occupancy, in order to create 6 feet social distancing. Without this primary precautionary measure in place, none of the other precautionary measures could possibly be effective, which is why approximately 98% of inmates at SDCC in unit 12-A were infected with COVID-19 in December of 2020.

Plaintiff and SDCC inmates are at immediate risk for another "wave" of a strain of Coronavirus to infect countless inmates at this facility. Plaintiff is begging this honorable Court for immediate help! Plaintiff still has not recovered from Coronavirus. He has side effects. The Defendants clearly refused to implement COVID-19 precautionary measures to protect prisoners lives, as if Plaintiff and SDCC prison inmates are not citizens. They did not treat plaintiff when he tested positive for COVID-19. No Doctor or Nurse came to question, examine, or treat him for COVID-19 symptoms. Instead of implementing COVID-19 precautionary measures to protect inmates from contracting COVID-19/Coronavirus, the Defendants consciously and deliberately allowed the Coronavirus to "Run it's course" amongst SDCC inmates. They were are playing a sadistic game of "Survival of the fitest!" "If you survive you survive? If you die you die?"

38.) Defendants also refused to transfer Plaintiff back to LCC, his classified prison, for safety and health reasons, because they wanted staff to assault him, they wanted him to be exposed to and to be infected with Coronavirus, and they wanted Plaintiff to lose good days, which causes his Parole Eligibility Date (PED) to be moved backwards as opposed to forwards if he is housed at his classified prison(LCC). Defendants will not allow him

84

to be in programs at soce because "he's not an soce classified inmate". But at soce he would be allowed to be placed in multiple programs & get his PED to 10/1/21 (this year!). Now Plaintiffs PED has been moved back to 6/23/23 (2-years).

39) In The California Supreme Court Case; "In re Von Staich, 56 Cal. App. 5TH 53 (2020), a Declaration was given by Dr. Chris Beyrer, who is "the Professor of Epidemiology, International Health and Medicine" at John Hopkins Bloomberg, School of Public Health. DR. Beyrer stated in relevant parts of his Declaration that,

"A substantial portion of the prison of the prisoner population could still become seriously ill or die unless considerable room was made in the prison, for prisoners to practice 6 feet Social Distancing".

        & this specialist strongest recommendation for "prison covid-19 environment is to MAKE Room To create 6 feet Social Distancing conditions". Not only did they release the prisoner Von Staich, who was in prison for Murder and Attempted Murder, but they released 50% of the prison population to make room For Social Distancing conditions. Nevada State prisons are clearly behind.

3 - V.

## COUNT I

The following civil rights has been violated: 8TH Amendment of The U.S.
Constitution - Deliberate Indifference, Conspiracy to act with deliberate
Indifference, Denial of Medical, Denial of Basic Human Need, Conditions of
Confinement, Cruel and Unusual Punishment.

Supporting Facts: [Include all fact you consider important. State the facts clearly,
in your own words, and without citing legal authority or argument. Be sure you
describe exactly what each specific defendant (by name) did to violate your rights].

39.) Plaintiff realleges and incorporates by reference, all allegations made
in paragraphs 1-38 as if fully restated herein.

40.) Defendants Pickett, Scally, McCoy, Hutchings, Cromwell, Hernandez,
Daniels, Gonzalez and Martinez, Brady, Ford, Attorney General's office,
Sisolar, John Doe Medical Director, Clark County Nevada, Indian
Springs Nevada, AMD, Smith, Bassett, Mesa, Thrasher, Harris and
Knate, all violated the 8TH Amendment - Deliberate Indifference
and Conspiracy to act with deliberate indifference by
(1) Refusing to allow Plaintiff to remain isolated with a
single cell inside unit 2 at SDCC, by being the Unit Porter
where he has 6 feet social distancing and could protect himself from
being infected with the most contageous Virus on the planet right
now - which is Coronavirus/CoVID-19. Which if infected, could
cause Plaintiff to suffer by becoming severly ill, have long term
sick effect, or death. and
(2) By refusing to transfer him back and by opposing his request
to be transferred back to the prison he is classified for - LCC,
so that he could be better protected from COVID-19. This while
Defendants being aware of the Coronavirus Global Pandemic, that
Plaintiff is Not properly housed at SDCC as he was sexually assaulted
by female staff at SDCC which is why he was originally transferred
to LCC and that Plaintiff is trying to be transferred back to LCC to be
placed under prison conditions that could better protect

4

from contracting Covid 19. As Plaintiffs has pre-existing medical conditions that makes him a high risk to becoming severely ill. And they way Plaintiff would be housed at SDCC, if he's not allowed to remain in unit 2, is he'd be housed in an open dormitory, under cramped conditions with only 6-inches distance away from the next man, which are prefect conditions for coronavirus outbreak.

The above defendants acted with deliberated indifference and conspired to act with Deliberate Indifference by knowing the seriousness of Coronavirus at SDCC, that they did not have social distancing conditions or any adequate precautionary measures in place in unit 12 and they knew that not only that he was not classified for SDCC because he was sexually assaulted by female staff at SDCC, but that he was requesting to be transferred the prison that they (Defendants) have him classified for, but that he has pre-existing conditions of allergy, hypertension and sinus infects, and was requesting to remain in unit 2 until he is transferred back to Lee for safter and security reasons and for health reasons, so that he is not exposed to Coronavirus at SDCC due to the conditions at SDCC. These defendants, instead of taking his legitimate and very logical health concerns into consideration, they responded unreasonably and recklessly by defying CDC Mandates and Recommendations by refusing to transfer him to his classified prison, by refusing to allow him to remain inside unit 2 where he was 6 feet socially distanced and instead forced him to be exposed to Covid-19 by making him to go to unit 12-A where there are no 6-feet social distancings. Only 6-inches distance they forced him to go to unit 12-A around 11/12/20 and less than a month later on around 12/7/20 Plaintiff was infected with Coronavirus and became severely ill with symptoms listed in Nature of the case and he still has symptoms/after effects/post Covid syndrome. He also has mental and emotional injury.

41.) Defendants Daniels, Williams, Hutchings, Hernandez, Puckett, Brady, Ford, Attorney Generals Office, Board of Prison Commissioners, Sisolak, Scally, John Doe, Medical Director, John Doe, Medical Practitioner, Clark County Nevada, Indian Springs Nevada, Gonzalez, Smith, Barrett, Mesa Thrasher, Harris and Knapz all violated the 8th Amendment - Deliberate Indifference and conspiracy to act with Deliberate Indifference by not providing adequate mask, and NO Hand sanitizer from 1/10/20 — to the present while Plaintiff has been housed in the 11 and 12 Dorms at SDCC, during this Global Pandemic of Coronavirus, with knowledge that they were required to

4-2

issue Plaintiff adequate masks and hands sanitizer during said time period, in this dorm of 120 inmates, who a dorm where 120 inmates use 4 phones, 2 bathrooms and 2 water fountains. They all have to touch the buttons on the same phones, buttons to push on the water fountain, and to push the flush button on the bathroom toilets.

Adequate Masks and hand sanitizer was mandated items to be distributed to socc prisoners to protect them from Contracting the extremely contagious and deadly Coronavirus. The above named defendants were aware that the Plaintiff health and life would be at Risk of being infected with covid-19 if he's not issued Mask and hand sanitizer. The didn't issue adequate Masks and No hand sanitizer, which contributed to Plaintiff contracting Coronavirus on arrival 12/8/20 and being injured with the symptoms listed in Nature of The Case, after effects that he'll have indefinitely. He also has mental and emotional injurys.

4.) Defendants Daniels, Williams, Hutchings, Pickett, 8150lock, Clark County Nevada, Indian Springs Nevada, Reyes, all violated the 8th Amendment cruel and unusual Punishment, conditions of confinement, Basic Human Need, Deliberate Indifference and conspiracy to Act with Deliberate Indifference by Refusing to have Hot Water in the socc Kitchen for Inmates to properly wash hands and food trays.

There has been laws in place for decades in Nevada, in Indian Springs and in Clark County, that "No Kitchen can legally function without hot running water for workers to wash hands and eating utensils, plates, trays". This because worker wouldn't be able to properly wash and sanitize hands and trays thus would expose the patron/inmate unreasonable risk of infection, disease, virus from it being passed from the hands, to the Inmates trays, and causing them to be infected. Which is exactly what happened to Plaintiff. The admitted "lack of hot water" in the socc contributed to Plaintiff contracting Coronavirus on arrival 12/8/20. When Defendants Refused to fix the hot water in this Kitchen to operate in accordance with health codes and safety that has existed for decades, in order to expose Plaintiff to an unreasonable Risk of harm to his health.

4-B

30.) Defendants Daniels, Williams, Hutchings, McCoy, Cromwell, Pickett, Brady, Ford, Attorney Generals Office, Board of Parole Commissioners, Board of Prison Commissioners, Scotty, Minev, John Doe, Medical Director, Clark County Nevada, UMC, John Doe, Medical Practitioner, Indian Springs, Nevada, Reyes, all Violated the 8th Amendment - Deliberate Indifference, and Conspiracy To Act with Deliberate Indifference, by the following statements of fact.

(1) Defendants knew since around 1/28/20 that Coronavirus was a serious matter because it became significant in China and Europe.

(2) Defendants knew that Coronavirus had become a Global Pandemic by 3/1/20. Proof of this fact is that SDCC stop all contact and Behind the glass visits due to COVID-19.

(3) In around August of 2020 the CDC issued the following COVID-19 Precautionary Guidelines that were adopted by Nevada, by Governor Steve Sisolak in the form of "State Directives" State Directives for COVID-19 which Mandated the following COVID-19 precautionary measures to reasonably protect U.S. citizens from COVID-19.

(A) Washing hands in hot water. (B) Hand Sanitizer, (C) Reduce occupancy of indoor facilities/buildings/churches to 25% in order to (D) Create 6-feet Social Distancing and (5) To quarantine for 14-days, those who've either been exposed to COVID-19 or who have tested positive for COVID-19, and (E) Adequate Masks;

(4) These defendants from 1/20/20 — to present, never issued any of the above precautionary measures to reasonably protect SDCC inmates from contracting COVID-19;

(5) On arrival 11/13/20 Defendants forced Me-Nitz to leave the quarantine unit 2 (where he was socially distanced 6-feet) to go to Unit 12-A bunk 4-N where there is NO 6-feet Social Distancing. They housed him 6-inches away from the man infront of him, 2½ feet away from the men on each side of him and 4 feet away from the 2 men behind him, with no physical barrier between them. There are 120 inmates in Unit 12-A, with 2 bathrooms and 1 water fountain;

(6) Defendants do not allow unit 12-A inmates cleaning supplies to sanitize the unit and they only allowed the porters to clean the unit once a day. They only allowed Unit 12-A to clean and sanitize unit 12-A on 1 day — (12/23/20).

(7) Defendants knew that there was an outbreak amongst 87 culinary staff and kitchen inmate workers on around 11/13/20 (Corona-Virus outbreak), because there was no hot water in the kitchen

4-C

for inmates to properly wash and sanitize hands, and trays. This caused

18) SDCC to lockdown unit 9.
Inmates who were working with and around the inmates who tested positive for COVID-19 in the kitchen on 11/15/20 were allowed to remain in the kitchen, as kitchen workers and were allowed to remain in the open doors even though they were exposed to COVID-19. They were allowed to remain around Plaintiff in unit 12-A.

19) Though Scally, Pickett and other SDCC staff came to unit 12-A on around 11/17/20 to address SDCC lockdowns and Coronavirus concerns. Stating in part that,

"Hutchings Scally and Pickett has had many meetings on their response to COVID-19 at SDCC since March of 2020. That they don't know what to do. They don't know how to slow down the spread of COVID-19 at SDCC."

That Unit 12-A is one of the only units at SDCC, where no one has tested positive for COVID-19. You guys must have good water. You guys must be blessed because, if one person in this unit (12-A) became infected with COVID-19 it would rapidly spread throughout this unit because of how this unit is designed with NO PHYSICAL SEPARATION,"

These defendants planted an inmate in 12-A on around 11/20/20 who was notically sick as he was severly ill. He was a Hispanic kitchen worker housed in unit 5. Defendants above, moved him to unit 12, bunk 5-05-R. They knew he was infected with Coronavirus. This Hispanic inmate was placed 3 bunks away from Plaintiff. This Hispanic tested positive for COVID-19 and was eventually hospitalized on around 12/7/20 for 20 days because he would no longer walk or function from COVID-19 symptoms.

Despite all of the above, on around 12/4/20 Pickett, Scally and Hutchings came back to unit 12-A and pressured unit 12-A inmates and threatened them by stating that, "If they (unit 12-A inmates) do not agree to work in the kitchen, because unit four inmates got sick in the kitchen, they we'll enforce social distancing on the phones and only allow 2 people to use the phone at a time (instead of 4)" which would nature cause a race riot and "they'll only issue y'all 3 cold sack-lunches a day (instead of 2 hot meals and 1 sack lunch. This while knowing the risk

4-D

To Plaintiff and to Unit 12-A inmates. So on this same day, 20 Unit 12-A agreed to work inside the Unit 12-A Kitchen offered being pressured into doing so.

That Unit 12-A inmates started working on around 12/5/20. On around 12/6/20 all of the Kitchen workers came back sick with Coronavirus. (10)By 12/8/20 Plaintiff and nearly 92% of Unit 12-A inmates all became severely ill. Many inmates died and were hospitalized. So Defendants predictions came true. There was a Rapid spread of Covid-19 once one person caught it in Unit 12-A

Plaintiff had Covid-19 symptoms of Cloudness of mind, Blankness in the mind, memory loss, drowsiness, vomiting, extreme chest pains, back pains, sober feeling of he's dying, constant feeling of being on the verge of drowning, weakness in body and energy, headaches, Sever dry cough, runny nose, urinating on self, body shakes, loss of taste, loss of smell, excessive sneezing, shortness of breath, fatigue. Plaintiff sustain these symptoms from 12/8/20 — 1/13/21.

After 1/13/21 Plaintiff was left with the following after effects till the present date, Cloudiness of the mind, Blankness in the mind, memory loss, drowsiness, back pains, feeling of drowning, weakness in body and mind, low energy, sever dry cough subsided to coughs, urinating on himself, fatigue, shortness of breath. But on 12/8/20 he assumed but didn't know for a fact that he had Coronavirus, But Plaintiff and (11)Countless other inmates tested positive for Coronavirus on 12/14/20, thought they were not initially informed of this fact.

Plaintiff Contends that the above named defendants violated the 8th Amendment by having clear knowledge of The Coronavirus Global Pandemic, the fact that staff and inmates at SDCC were increasingly becoming infected with Coronavirus, primarily from the Kitchen. They Knew that there were Mandatory covid-19 precautionary measure that were supposed to be implemented at SDCC, but especially in the dorms, but they did not put any measures in place. They were supposed After having/having knowledge of Plaintiffs serious risk of contracting Coronavirus were then required by law to take reasonable measures to abate that Risk. Instead, the above named Defendants Not only, Refused to follow Federal Mandates, CDC Guidelines and Nevada State Directives, but they took measures to

4-E

dramatically increase his risk of contracting covid-19 that it constitutes Deliberately Indifference, and conspiracy to Act with Deliberate Indifference. This based upon the above. The defendants responded with Reckless disregard for Plaintiffs life, health and safety which caused him to become infected with covid-19 and sustained physical, mental and emotional injury. At the least these above defendants acted and conspired to Act with deliberate indifference. At worst they arguable intentionally exposed him to covid-19 in order to caused him to become severely ill or to die from covid-19. Plaintiff received physical mental and emotional injury.

44) Every Inmates in unit 12-A was tested for covid-19 on 10/14/20, because so many inmates in unit 12-A were requesting cold packs because they were sick.

45) Defendants Daniels, Williams, Hutchrg, Hernandez, McCoy, Cromwell, Pickett, Brady, Ford, Attorney Generals office, Board of Prison Commissioners, Sisolak, Board of Parole Commissioners, Scally, MINEV, John Doe Medical Director, O.M.D, John Doe Medical Practitioner, Clark County-Nevada, "Indian Springs", Nevada, Violated the 8th Amendment Deliberate Indifference, and Conspiracy to Act with Deliberate Indifference for the following collective reasons.

4) Because they tested Plaintiff and the whole unit 12-A on around 10/14/20, but conspired Not to Inform Inmates in unit 12-A who tested positive for covid-19. And they conspired to REFUSE to treat Plaintiff and unit 12-A inmates for covid-19 Symptoms.

(a) By "planting" inmate Persey Rodgers in unit 12-A from unit 11 "Because he tested Positive for covid-19". Staff told Rodgers that "he was moving was moving from the program Unit because
(1) to 12-A because he tested positive for covid-19 and they didn't want him in unit 11 who Inmates who tested negative. But there are Inmates in unit 12-A who tested positive so you're moving to 12-A because that is the New Quarantine Unit".

As stated before, at this time though Inmate had submitted Kites (Inmate Request Forms) requesting the covid-19 test Results, they hadn't Been told or issued a Response thereto. So they didn't know. So this caused a uproar in unit 12-A where these Inmates DEMANDED answers, as to why they "keep planting people who are sick with covid-19 into unit 12-A.

This sparked a "protest," where unit 12-A inmates refused to Lockdown until the warden came to answer our questions and concerns about planting inmates in unit 12-A, why we haven't been

4-F

issued our test results, cleaning supplies to clean the unit, and to give us fresh air or relieve us of this "cloud of sick air". This shut down the entire prison, and could have caused a riot between inmates and staff. But it was worth it because the alternative is death. Unit 12-A were trying to have COVID-19 precautionary measures to be implemented to save human lives and to protect their long term health.

This "Protest" cause. Scally Jr came down to unit 12-A on 12/22/20 at around 5:00pm. Scally admitted that Persey Rodgers was moved to unit 12-A because "He has COVID-19." But before entered the unit 12-A, he ordered that Persey Rodger be moved to unit 2 – Quarantine unit to try to pacify unit inmates – to show that "the problem is corrected;" and to "cover up" to wrong that they deliberately did." To intentionally place a COVID-positive inmate inside an open door with other inmates.

Scally then entered the unit 12-A with other staff and asked "Who the spokesperson is?" Plaintiff raised his hand as "Spokesperson for protesters." Scally then asked Plaintiff to "sit down with him (Scally) at the middle unit 12-A table to discuss demands." Plaintiff complied. They sat down with the protesters standing around the table.

Plaintiff demanded the following on behalf of Self and protesters: 1) Clean supplies so that inmates could properly clean the unit and sanitize the unit (2) To fix hot water in the kitchen, (3) To create 6 feet social distancing conditions in unit 12-A, so we could be protected from COVID-19, (4) To issue proper N95 Masks to protect us from COVID-19, (5) To allow us to go outside to get fresh-air when we clean the unit, (6) We DEMAND our 12/14/20 COVID-19 Test Results!, (7) That to prause this unit the quarantine unit 10-A would violate Federal law; and (8) That inmates who are positive for COVID-19 to be quarantined."

Scally responded with, "(1) I disagree with this unit 12-A being a quarantine unit," though, he admitted on 12/23/20 that "he made unit 12-A a quarantine unit," (2) That he ordered Medical not to issue us our 12/14/20 COVID-19 test results. Though Scally agreed to have medical to issue unit 12-A inmates there 12/14/20 test RESULTS. But this whole time Scally and medical staff knew that inmates in unit 12-A were positive for COVID-19 and they conspired to "cover-up this fact," because they "did not want to respond reasonably to inmates COVID-19 risk by treating inmates medically, by quarantining positive inmates and implementing COVID-19 precautionary measures. A CRISIS had occurred

at SDCC that was created by Defendants.

Scally agreed to order Medical to Respond to Plaintiffs Kite requesting test results, + issue him cleaning supplies that will bring down on 12/23/20. But he stated that "He will NOT CREATE 6 feet Social Distancing Conditions at SDCC in unit 12-A" and "he wouldn't issue us mask because we already have cloth masks."

Scally and other staff stated that they had a "list of inmates who were positive for COVID-19," but Refused to inform them, treat them, and quarantine them. Plaintiffs Kite was returned to Plaintiff on 12/22/20 and Plaintiffs test for COVID-19 said "POSITIVE." 99% of all Kites that were Returned to inmates in unit 12-A on 12/22/20 were all positive. But of Course defendants already knew this but didn't want him to know, didn't want to put measures in place to prevent it from happening, didn't want to treat or to quarantine him, so they chose to silent and to cover it up. They didn't apply state directives of 6-feet social Distancing or the reduction of indoor occupancy to 50% or to 25%. Defendants were deliberate indifferent to Plaintiffs COVID-19 Risk without question, which caused him to Contract COVID-19, to suffer many symptoms, and after-effects and Refused to treat him or to even come to speak with or to examine him.

Plaintiffs advocate, Mercede Maharis, who works for the Legislature, recorded Plaintiff on audio speaking of all of the abuse and sent the recording to Sisolak, Ford, ABC etc, to get them to correct the violations on 12/23/20. They refused to correct the problems listed above. Since October of 2020 Jodi Hocking has been trying to get Daniels and Sisolak to release some of NDOC's NON-VIOLENT prisoners + make room for Social Distancing. Sisolak and Daniels stated that "there is no one in NDOC who is eligible for early release in NDOC!?" wow. absurd!

As paragraph 89 in Nature of the Case quotes DR. Beyrer as stating that, "a substantial portion of the prisoner/prison population would still become seriously ill or die unless considerable room was made in the prison, for prisoners to socially distance."

Plaintiff contends that all above named Defendants Conspired to infect Plaintiff and unit 12-A inmates. They Conspired to place inmates in unit 12-A who were positive for COVID-19. They conspired to not implement COVID-19 protocols and precautionary measures issued by CDC and adopted by Nevada Governor: Sisolak, but not implemented in his business (NDOC) though he force all other Nevada business owners to implement these measures in

4-H

there business. They conspired to not tell Plaintiff and other inmates at his jail that they tested positive Scally made they order and all defendants followed suit

¶ This is in part why they violated all medical procedures and policies and couldn't treat inmates for COVID19 at all, is because they didn't want prisoners to Know that they had contracted Coronavirus. This is Criminal Behavior! Plaintiff sustained physical, mental and emotional injury.

46.) Defendants Daniels, Williams, Hutchings, Hernandez, McCoy, Cromwell, Pickett, Brady, Ford, Attorney Generals office, Board of Parole Commissioners, Board of Prison Commissioners, Sisolak, Scally, Minev, John Doe, Medical Practitioners, OMD, Clark County (Nevada), John Doe, NDOC Medical Director, Indian Springs (Nevada), all Violated the 8TH Amendment by acting with Deliberate Indifference and Conspiracy to Act with Deliberate Indifference by knowing since arrival 12/6/20 that Plaintiff was around people in Unit 12-A who were exposed to COVID or who had COVID and refused to quarantine them (Kitchen workers) which caused Plaintiff to be exposed to COVID-19 and to contract COVID-19. Further proof of this type of behavior is this:

"~~Because~~ he had tested positive for COVID19?." They only quarantined Rodgers because Plaintiff and Unit 12-A protested and shut the prison down, in direct response to them moving Rodgers to Unit 12-A When Plaintiff and other inmates in Unit 12-A tested positive for COVID-19, they Refused to quarantine Plaintiff until he filed multiple Kites "demanded to be quarantined" so that "he doesn't infect more prisoners and be moved out of a unit with COVID/sick air circulating in the unit" So they quarantined Plaintiff on 12/29/20 and 18 other inmates direct Plaintiffs Kites. They released him from quarantine 8 days later back into Unit 12-A into the "Same conditions"

They theme is None/Defendants Refused to Simply "Do The Right thing!" They Showed a Complete disregard for Plaintiffs life and health!" They're having meetings "conspiring" but not conspiring to put in COVID19 measures! Clearly they only conspiring to defy COVID19 precautionary measures and protocol Plaintiff is still suffering after-effects. He is still sick He could still die from COVID-19 the next Round of COVID and the multiple "New Strains of COVID-19" Plaintiff sustained physical, mental and emotional injury.

## COUNT II

The following civil rights has been violated: 1ˢᵗ Amendment Of The U.S. Constitution — "RETALIATION", and 1ˢᵗ Amendment Free Exercise Of Religion and R.L.U.I.P.A (Religious Land Use and Institutionalized Prisons Act).

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

47.) Plaintiff realleges and incorporates by reference, all allegations made in paragraphs 1-46

48.) Defendants Daniels, Williams, Hutchings, Hernandez, McCoy, Cromwell, Pickett, Martinez, Scally, Everage, Reyes, Gonzalez violated the 1ˢᵗ Amendment by not allowing him to order canteen (store) while he was in quarantine unit from 10/6/20 — 10/26/20, out of Retaliation for him being in quarantine for a civil trial against NDOC and because of grievances that he filed on 6/5/20, 6/7/20, 6/17/20 x2, 6/12/20, 6/21/20 x8, 6/30/20 7/23/20, 7/12/20, 8/22/20, 8/27/20, 8/19/20, 8/18/20, 1-4/20, 10/12/20, 10/17/20.

49.) Defendants Daniels, Williams, Hutchings, Hernandez, McCoy, Cromwell, Pickett, Martinez, Scally, Everage, Reyes, Gonzalez violated the 1ˢᵗ Amendment Free Exercise, R.L.U.I.P.A, and Retaliation by in addition to not allowing him to order canteen out of Retaliation, but by refusing to serve his complete Religious Common Fare meals from 10/7/20 — 10/25/20 when Plaintiff requested to be removed from his Islamic Diet because these defendants were only issuing him the cold portions of his meal, sometimes not issuing him his lunches etc, all out of Retaliation for him being in Quarantine because he was going to civil trial against NDOC, and because of the grievances listed in paragraph 86. The Retaliation was so significant that he had to request to be removed from his Religious Diet.

50.) Defendants Daniels, Williams, Hutchings, Pickett, Scally, John Doe, Property c/o, John Doe, Property Sgt all violated the 1ˢᵗ Amendment by putting my Levi/Denium Jacket inside of the SDCC Property Room on 10/26/20 instead of

allowing him to where it on Transport, But they Never Returned his Jacket to him when he Returned from Court. They either destroyed it, gave it away, or still have it? And The AR. For Transportation in NDOC, it "does not prohibit inmates from wearing Jackets on Transport" But NDOC defendants listed above (1) did't allow Plaintiff to where his Jacket on Transport, in the dead of winter cold, and (2) refused to return is Jacket to him in Retaliation for him going to Trial against NDOC Director Williams on 10/20/20 in a Civil Trial and because of grievances listed in paragraph 36.

51.) Defendants Daniels, Williams, Hutchings, Hernandez, McCoy, Cromwell, Sisolak, Pickett, Brady, Ford, Scally, OMD, Clark County, Indian Springs, Gonzalez, Martinez all Violated the 1st Amendment by (1) Refusing to give Plaintiff the Porter Job in Unit 2 From 10/6/20 — 10/13/20 because of his active lawsuit that he was going to Trial for while in Unit 2. It was the reason why he was in unit 2, and because of grievances that he filed listed in paragraph 36. That these defendants Martinez, Gonzalez and Hernandez specifically stated that, "They could not give Plaintiff the porter Job because all he (Plaintiff) would do is walk around Unit 2 and find a Reason to file a grievance and lawsuit about what he sees in the Unit 2 (Prison Conditions). So instead of hiring Plaintiff, who would of was in the Unit, they had to hire new Porters every 2 to 3 days because most people in his wing was going home. But they kept one Hispanic permanent Porter, who was in Unit 2 indefinitely.

(2) These defendants, by refusing to give Plaintiff the porter Job, contributed to his PED (Parole Eligibility Date) and expiration date being pushed back 4 months and counting.

(3) These same defendants Refusing to allow Plaintiff to have the Porter Job and Refused to allow him to remain in Unit 2, where he was isolated and protected from Covid-19 and from assault by female staff out of Retaliation for his lawsuit and grievances listed in paragraph 36, which resulted in Plaintiff catching Covid-19 suffering and Still Suffering from symptoms and after effects / Feel above.

52.) Defendants Daniels, Williams, Hutchings, McCoy, Cromwell, Pickett, Brady, Ford, Attorney Generals Office, Board of Prison Commissioners, Sisolak, Board of Parole Commissioners, Scally, OMD, Clark County, Indian Springs, Hernandez, Smith, Barrett, Mesa, Thrasher, Harris, and Kratz all Violated the 1st Amendment by refusing "to Keep Plaintiff in Unit 2 where he was isolated - (1) Set socially distance, until he was/is Transferred to his Classified prison (LCC) for health, safety and Security Reasons; (2) For Not transferring him to LCC after 1/22/20

where he could be more protected from COVID-19. And

(3) For opposing his requests to be immediately transferred to LCC due to Coronavirus concerns, and/or of Retaliation for his grievances listed in paragraph 86 and because he was only being housed at SDCC because of a Civil Trial against state prison official.

That these defendants instead wanted to deliberately expose him to COVID-19 so that he could either be exposed to COVID-19 or to contract COVID-19 and to become severly ill or to die from COVID-19, based upon paragraphs 1—88. This act of Retaliation for his lawsuit Trial and grievances.

Plaintiff within 2 weeks of defendants kicking him out of quarantine unit 2 + Unit 12-A, Plaintiff contracted Coronavirus and became severly ill/still has side effects and could still die from COVID-19.

## COUNT III

The following civil rights has been violated: _NEGLIGENCE and ARTICAL 1 Section 6 of Nevada Constitutional — Cruel and Unusual Punishment_

Supporting Facts: [Include all fact you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be sure you describe exactly what each specific defendant (by name) did to violate your rights].

53) Plaintiff realleges and incorporates by reference, all allegations made in paragraphs 1 - 52 as if fully restated herein.

54.) Defendants Daniels, Williams, Hutchings, McCoy, Cromwell, Pickett, Brady, Ford, Attorney Generals Office, Board of Parole Commissioners, Board of Prison Commissioners, Sisolak, Scally, Minev, John Doe, NDoc Medical Director, OMD, John Doe, Medical Practioner, Clark County, Indian Springs, Reyes, Violated Article 1 Section 6, and Acted With Negligence by "Not Implementing" any of the following COVID-19 Precautionary Measures Mandated by the CDC and adopted by The State of Nevada, through State Directives, adopted by the NDOC, but never Implemented at soc;

4) No reduction in occupancy of either 50% or 25%, (2) No 6 feet Social distancing conditions created, (3) No adequate Masks, (4) No Hot water in Kitchen for inmates to properly wash and sanitize hands, (5) No hand sanitizer, (6) No quarantining of those exposed to COVID-19 or those positive for covid-19. See paragraphs 1 - 40.

Plaintiff contends that these above mandates are mandated to reasonable protect people from contracting the most contagious

------------------------------------

## D. PREVIOUS LAWSUITS AND ADMINISTRATIVE RELIEF

1)   Have you filed other actions in state or federal courts involving the **same or similar facts** as involved in this action? _____ Yes ___✓__ No. If your answer is "Yes", describe each lawsuit. (If more than one, describe the others on an additional page following the below

disease on planet earth from 1/20/20 to the present date. These COVID-19 precautionary measures to reasonably protect inmates health. These above Defendants, Counties and Cities, had a duty to implement these precautionary measures. Instead these defendants refused to implement these "COVID-19 precautionary measures which "naturally exposed Plaintiff to an unreasonable RISK of harm to his health". Due to defendants actions Plaintiff caught COVID-19 on around 12/7/20 and sustained the following known injuries/symptoms. (1) Cloudiness in the mind, (2) Blankness in the mind, (3) Memory loss, (4) drowsiness (5) Vomiting, (6) extreme chest pains (7) back pains, (8) feeling of dying, (9) a feeling of Constantly being on the verge of dreaming, (10) Weakness in body, (11) low energy, (12) headaches, (13) Sever dry cough, (14) Running nose, (15) Urinating on Self, (16) body shakes, (17) loss of taste, (18) loss of smell, (19) excessive Sneezing and (20) Shortness of breath, (21) fatigue, (22) after-effects and (23) long term effects and injuries that Plaintiff is not aware of because defendants have to date REFUSED to examine him to determine other medical issues that he may have.

outline).

a)   Defendants: _____ *N/N*

b)   Name of court and docket number: *N/A*

c)   Disposition (for example, was the case dismissed , appealed or is it still pending?): _____ *N/A*

d)   Issues raised: _____ *N/A*

_____

_____

e)   Approximate date it was filed: _____ *N/A*

f)   Approximate date of disposition: _____ *N/A*

2)   Have you filed an action in federal court that was **dismissed because it was determined to be frivolous, malicious, or failed to state a claim upon which relief could be granted?** ☐ Yes ✓ No.  If your answer is "Yes", describe each lawsuit.  (If you had more than three actions dismissed based on the above reasons, describe the others on an additional page following the below outline.)

Lawsuit #1 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _____ *Bankof (N)Owen*

b)   Name of court and case number: *0:17 N.pt (no----*

c)   The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d)   Issues raised: _____ *EActbre*

_____

e)   Approximate date it was filed: _____ *N/A 9/19*

f)   Approximate date of disposition: _____ *N/A 9/19*

Lawsuit #2 dismissed as frivolous, malicious, or failed to state a claim:

a)   Defendants: _____ *N/A*

b)   Name of court and case number: *N/A*

7

c) The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d) Issues raised: _____ N/A _____

_____

e) Approximate date it was filed: _____ N/A _____

f) Approximate date of disposition: _____ N/A _____

Lawsuit #3 dismissed as frivolous, malicious, or failed to state a claim:

a) Defendants: _____ N/A _____.

b) Name of court and case number: _____ N/A _____.

c) The case was dismissed because it was found to be (check one): _____ frivolous _____ malicious or _____ failed to state a claim upon which relief could be granted.

d) Issues raised: _____ N/A _____

_____

e) Approximate date it was filed: _____ N/A _____

f) Approximate date of disposition: _____ N/A _____

3) Have you attempted to resolve the dispute stated in this action by seeking relief from the proper administrative officials, e.g., have you exhausted available administrative grievance procedures? ✓ Yes _____ No. If your answer is "No", did you not attempt administrative relief because the dispute involved the validity of a: (1) ____ disciplinary hearing; (2) ____ state or federal court decision; (3) ____ state or federal law or regulation; (4) ____ parole board decision; or (5) ____ other _____.

If your answer is "Yes", provide the following information. Grievance Number _2006_.
Date and institution where grievance was filed _10/11/20_.

Response to grievance: _Not emergency_ _____

_____

_____

8



## E. REQUEST FOR RELIEF

I believe that I am entitled to the following relief:

They Defendents collective pay plaintiff (1) $800,000 in Compensatory Damages, (2) # 900,000 in Punitive Damages, (3) 800,000 in mental and Emotional Damages, (4) all out of pocked expenses, (5) Injunctive Relief: in the form of ORDERING defendents to implement precautionary CDC measures withining Colivbied pandemic's, or any health crisis

I understand that a false statement or answer to any question in this complaint will subject me to penalties of perjury. **I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.** See 28 U.S.C. § 1746 and 18 U.S.C. § 1621.

_____
(Name of Person who prepared or helped prepare this complaint if not Plaintiff)

_____
(Signature of Plaintiff)

01/20/34
(Date)

- - - - - - - - - - - - - - - - - - - -
(Additional space if needed; identify what is being continued)

9